■ JOHN C. EGAN, as Commissioner of the New York State Department of Transportation, Appellant, v NIAGARA MOHAWK POWER CORPORATION et al., Respondents. [625 NYS2d 686] —Peters, J. Appeal from an order of the Supreme Court (Keegan, J.), entered October 22, 1993 in Albany County, which, *inter alia,* denied plaintiff's motion for summary judgment.

Defendant Niagara Mohawk Power Corporation (hereinafter Niagara Mohawk) and defendant New York Telephone Com-

pany (hereinafter NY Telephone) maintain various jointly owned utility poles on the right-of-way of State Route 7 in the Town of Rotterdam, Schenectady County. In 1990, the State Department of Transportation (hereinafter DOT) contracted for the improvement and upgrading of various portions of Route 7 which included, *inter alia,* the replacement of existing guide railings with box beam guide railings with deflection to make the guide rail more energy absorbent and therefore more forgiving to vehicles and motorists who come into contact with it. The new design required the removal of all obstacles located in the five-foot-deep area immediately behind the railing called the "deflection zone".

On or about February 6, 1991, plaintiff sent defendants a "Revised Post Award Notice" (hereinafter Notice) and a "Revised Post Award Special Note, Coordination with the Utility Schedule" (hereinafter Special Note) notifying them that certain utility poles would have to be removed or relocated.[1] An attachment to the Notice identified 12 poles that "are in physical conflict with guide railing deflection" and another four that "are in physical conflict with back wall excavation and overhead work clearance". While defendants relocated the four poles which were in conflict with back wall excavation and overhead work clearance upon receipt of the Notice, they took no action regarding the remaining utility poles. The Notice indicated that it was issued "PURSUANT TO SECTION 11-102 OF THE GENERAL OBLIGATIONS LAW AND PART 131 OF TITLE 17 OF THE NEW YORK STATE CODE". Further, it "formally" advised defendants that they should "immediately" contact DOT and the contractor, in writing, if they were unable to relocate the utility poles in accordance with the schedule set forth therein and that in the absence of revision, the schedule detailed by the DOT would remain in effect. The Notice also informed defendants that their failure to remove the poles within such time could result in the imposition of liability under the General Obligations Law, other State laws or the common law if their inaction delayed the contractor's timely completion of the project.

After defendants failed to relocate the remaining utility poles or notify DOT or the contractor that they were unable to comply with the relocation schedule, plaintiff commenced a special proceeding pursuant to CPLR article 4 in April 1993.

---

1. Although T.C.I. of New York, Inc. was initially a party to this action, all claims by or against T.C.I. were subsequently discontinued pursuant to a stipulation of discontinuance.

Supreme Court converted such proceeding, pursuant to CPLR 103 (c), to an action for injunctive relief. Following joinder of issue, plaintiff moved for, *inter alia,* summary judgment and defendants each cross-moved for, *inter alia,* summary judgment dismissing the complaint. Finding triable issues of fact as to whether the Notice, referencing the Special Note with attachments, constituted a final agency determination, Supreme Court denied plaintiff's motion. Plaintiff appeals.

Plaintiff contends that since the Notice constituted a final agency determination which triggered the Statute of Limitations applicable to CPLR article 78 proceedings *(see,* CPLR 217 [1]), defendants' failure to contest such determination within the limitations period precludes a collateral attack of such determination. We note that a CPLR article 78 proceeding is "the customary procedural vehicle for review of administrative determinations" *(Solnick v Whalen,* 49 NY2d 224, 231) and that "[a]ny claim that the [Notice] * * * was overbroad and beyond the authority of [plaintiff] would properly have been the subject of a proceeding under CPLR article 78" *(Matter of Public Serv. Commn. v Rochester Tel. Corp.,* 55 NY2d 320, 325) which should have been commenced "within four months after the determination to be reviewed bec[ame] final and binding upon [defendants]" (CPLR 217 [1]; *see, Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62, 72). In determining whether the Notice sent by plaintiff triggered the Statute of Limitations, it is well settled that "[a] determination becomes final and binding when it has an impact upon a [party] or when it becomes clear that a [party] has been aggrieved" *(Matter of Halpin v Perales,* 203 AD2d 675, 677; *see, New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 165).

Our review of the record reveals that defendants received the Notice on or about February 6, 1991 indicating, through attachments annexed thereto, that certain utility poles were "in physical conflict with guide railing deflection", together with a reference to 17 NYCRR part 131, and were advised that the removal schedule was "in effect" absent defendants' explanation why removal would not be feasible within such time frame. We find that this language indicated that no further steps or actions would be taken by DOT to support its directive. The Notice further specified that defendants would be liable for damages, direct or consequential, caused by defendants' failure to remove the utility poles in a timely manner. We find that the Notice clearly had an impact upon defendants and that they were aggrieved thereby, therefore

triggering the four-month limitations period *(see, Matter of Halpin v Perales, supra; Langham v State of New York,* 124 AD2d 405, *lv denied* 69 NY2d 605).

Defendants' contention that the Notice did not constitute a final agency determination pursuant to 17 NYCRR former 131.11 (a) (repealed Aug. 24, 1994) is unavailing.[2] Plaintiff, pursuant to 17 NYCRR former 131.11 (a), was empowered to require the relocation of utility poles located in the right-of-way either during or after the completion of a construction project, even where the utility poles did not conflict with actual construction, if it was determined that the utility poles were "likely to have a high accident potential" *(ibid.).* We find that the Notice, coupled with the attachments thereto, indicating that certain utility poles were in conflict with the guide rail system (itself a safety measure seeking to reduce high accident potential) and explicitly referencing 17 NYCRR part 131, communicated sufficient formal notice of the finality of DOT's safety findings. Since defendants never challenged the determination that certain utility poles were in conflict with the guide rail system, they are precluded from now challenging the merits of this determination *(see, Matter of Public Serv. Commn. v Rochester Tel. Corp., supra; Matter of Abrams v Public Serv. Commn.,* 96 AD2d 701, *affd* 61 NY2d 718; *Flacke v Salem Hills Sewage Disposal Corp.,* 91 AD2d 739).

Although we find that defendants could collaterally challenge the determination on jurisdictional or constitutional grounds *(see, Matter of Public Serv. Commn. v Rochester Tel. Corp., supra,* at 325-326; *Axelrod v Branche,* 90 AD2d 862, 863), defendants' conclusory arguments on such issues do not warrant further consideration. We have considered defendants' other arguments and find them to be without merit.

We therefore modify the order by reversing so much thereof as denied plaintiff's motion for summary judgment.

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as denied plaintiff's motion; said motion granted and summary judgment awarded to plaintiff; and, as so modified, affirmed.

---

2. The issue herein addresses the propriety of Supreme Court's determination that plaintiff complied with 17 NYCRR former 131.11 (a). This regulation was recently amended (eff Aug. 24, 1994) to provide, in pertinent part, that DOT, "whether or not in conjunction with a highway construction or maintenance project, may require the relocation of utility facilities which may interfere with the free and safe flow of traffic or which are located within the clear zone or deflection zone".